Committee of Unsecured Creditors v. T.D. Investments Mr. Schriever Good morning, and may it please the court. The debtor in this case, Great Lakes Quick Lube, held leasehold rights as its most significant property. In the bankruptcy, these leasehold rights could be assumed and then either retained by the debtor or assigned, essentially sold to third parties, for the benefit of the estate and the creditors. Here the property, those two leases, could not be retained or sold because the debtor rid itself of that property prior to the bankruptcy. One creditor benefited from those leases, T.D. Investments, the defendant. The body of creditors suffered. The act by which the debtor rid itself of the leases was a transfer, which is avoidable under Sections 547 and 548 of the Bankruptcy Code, and the Bankruptcy Court erred in determining that there was no avoidable transfer or that the committee otherwise could not pursue those avoidance actions. Well what are we supposed to do with this, is it 365C or something like that? 365C3. That the transfer provision doesn't apply when you have real estate? I think that the easiest way to answer that is the way that the Edward Harvey Court answered it, which is that Section 365C3 is simply inapplicable when a lease is terminated in a constructively fraudulent manner. In other words, the provision in Section 365 terminated, that means finally and irredeemably terminated. The court always has the power to avoid a termination in order to reinstate the lease, and if it does so, then the termination is a nullity. Wait, explain what it encompasses, what would be an example of something that would come within its provision? If a debtor terminates a lease of non-residential real property prior to the bankruptcy, simply by filing a bankruptcy petition, the debtor cannot revive the lease and then assume it. Now that doesn't account for an avoidance action, which nullifies the termination, makes it as though the termination never happened, and places the debtor in a position where it can then assume the lease. But under your reading, 365C3 would mean that trustees cannot assume worthless expired leases that can never be revived. So why would anyone ever try to assume such a lease in the first place? They probably wouldn't. What a debtor would want to do is assume a lease that had some value, and perhaps it terminated the lease in a way that is not constructively fraudulent or not avoidable. In that scenario, it could not assume that lease. If there's no avoidance action possible, then the termination can't be undone and the debtor can't assume the lease in bankruptcy. So was there a lease here? There was a lease, and on the day that the termination agreement was agreed to, the debtor still enjoyed its rights under the lease. It was not until it agreed to the termination that it parted with that property interest. It was not until what? Until it agreed to a voluntary termination that it parted with its interest in the leases. Well is there a lessee? Well since the debtor terminated in 2012, it has not been a lessee on those properties, no. The property reverted to the landlord, which is the defendant in this case, and then the landlord leased the property to a different party. I mean this C-3 seems pretty clear. The leases of non-residential real property, that's true, and it was terminated under applicable non-bankruptcy law prior to the bankruptcy proceeding? Correct. So is that this case? It is this case until the committee brings an avoidance action to undo the termination. But I don't understand that. I thought this subsection of C was an exception to what the trustee can do. It is an exception. So why is it applicable here? Because through this avoidance action, the committee is seeking to nullify the termination. Well it sounds like you're seeking to nullify C-3. Well if there is no termination, then yes, C-3 would cease to be applicable. What do you mean there's no termination? The result of an order of the court avoiding the transfer is to undo the transfer. In this case, undoing the transfer undoes the termination. I don't, where do you find that in the statute? Well this is the Edward Harvey case interpreting the interplay between 365-C-3 and the avoidance statutes. I don't understand, 365-C-3 seems perfectly clear, freestanding. What's incomplete about it? There's nothing incomplete about it, but it exists within the larger bankruptcy code. And within that bankruptcy code, the trustee, the bankruptcy trustee, or in this case the committee, has the power to avoid transfers. And when those transfers are avoided, the parties are placed in positions. It says the trustee may not assume an unexpired lease of the debtor if, and the if includes this subsection 3, right? So if it's the lease of non-residential real property and it's been terminated, etc., etc., then the creditors are out of luck, aren't they? Is that what C and 3 say? The way that that needs to be read is that the lease is finally irredeemably validly terminated because there's always a chance for an avoidance action in the case of an invalid avoidable transfer. The avoidance statutes are always lurking. So you're saying the termination was invalid? Correct. It was invalid. Why is it invalid? Because of sections 547, the preference statute, and 548, the fraudulent transfer statute. No, no. Facts, not sections. It was invalid because these leases had significant value to the debtor. So why would the debtor terminate leases that had significant value? This is before the bankruptcy, of course. What would its motive be? It seemed that the motive in this case was a desire to stop doing business with the landlord. So what's wrong with that? Well, because when there's a bankruptcy... But there wasn't a bankruptcy yet. Correct. So why wasn't this valid when done? They hoped, I suppose, not to become bankrupt. So what was the irregularity in the termination? If a company is insolvent or if it files bankruptcy within 90 days after it makes a transfer, then we get to look back. So even if something seemed valid... Not under C-3, you don't. Correct, but under the avoidance statutes, we do. So it nullifies C-3? It makes C-3 inapplicable after a termination has been avoided. So section 548 deals with an avoidance, right? Correct. Once a transfer is avoided, 550 gives us the remedies. Correct. And then 550 allows recovery of the property or recovery of the value of the property. Correct. So even if 365 applies, the leases can't be assumed and the property can't be recovered, but the value of the property can still be recovered. Is that right? Some of the cases interpreting this have said if the leases can't be assumed, then there's no real value to them anyway. So are you asking on remand for the court to determine whether Great Lakes received reasonably equivalent value? That's right. Did the bankruptcy court actually find that Great Lakes received reasonably equivalent value? It did not. And why is that important? It's important because that is a requirement under the fraudulent transfer statute. That was largely the subject of the trial, the value that these leases could have provided versus what the debtor got in return for handing over the property. Another way to look at the Section 365 question is to look at the Filer case, the Ninth Circuit case, because that case focuses on the extraordinary extent of the bankruptcy avoidance powers to take transactions, transfers that seem final and irreversible, and nevertheless avoid them. But surely C is a limitation on those powers, isn't it? You'd acknowledge that, wouldn't you? It's not a limitation on the avoidance powers. It's a limitation on the assumption of a lease which has been terminated and remains terminated. Well, isn't that a limitation on the bankruptcy court's power? It's a limitation on what the debtor can do with leases which it has terminated. What the debtor can do? The debtor would ask the bankruptcy court for an order authorizing it to assume or reject leases that remain non-terminated, executory, if you will. So I'm trying to get to your bottom line on this. The termination of a lease can be avoided, right? Correct. The lease itself cannot be reinstated, but the estate can recover the value of the lease. Yes. In this case... So does that mean you're just seeking damages? Yes. Yes. One of the leases was set to expire or did expire about a year ago, as it is, we're approaching three years since this transaction. There's really no way to recover the property itself, so the committee is seeking the value. And that's on remand under Section 550. That's what we would ask the bankruptcy court to order. So your argument is that if they hadn't terminated the lease,  Yes, these stores were... And so the creditors would do better. So how much are you seeking in damages? The testimony at trial placed the value of these leases between $300,000 and $450,000. The debt forgiveness that the debtor received on the entire package of five terminated leases was between $40,000 and $50,000. So the difference between those two values. Okay. But there was no actual finding in the bankruptcy court. Correct. The bankruptcy court did not reach that due to the nature of its decision. Right. And I would reserve the remainder. Okay, thank you. Thank you. Mr. Schriever. Mr. Hudick. Good morning. I represent TD, the defendant of Pelley in this action. My client, just as a small backdrop, I know you've read the briefs, is a property re-letter. He's a landlord. Landlords need predictability in all their commercial actions like any other business person. That's why we're before this honorable court this morning. We need to have a clear determination that 365, sub 3, sub 3 clearly exempts all voluntary non-residential commercial transactions. I thought the purpose was to protect the current lessee. So the lessee, if the lease is terminated and then there's a new lessee and you try to take the, I mean not you, but the other side tries to take the lease away from the person who is the new lessee, that I would assume is forbidden. Right? But what about the damages? Right? You caused harm to the creditors, so why shouldn't you have to pay? Well, let's look at it from the reverse angle, from backwards forwards. We were talking about whether or not this voluntary lease termination could be avoided and what were the damages. The final aspect of Judge Kelly's four-part decision, all which were in favor of TD in this case, and each individually would stand to reaffirm it, talked about the issue of estoppel. This is an odd and peculiar case where the committee filed bankruptcy on, the debtor filed bankruptcy on April 2nd of 2012. Along with the motion to terminate a number of leases, four days later they moved to terminate all of the leases, including those voluntarily terminated, including those five by my client. So four days later they're saying, we've looked at all this and the document itself, the moving paper is very clear that they're representing to the court, there's no value in these leases, it's a burden on the estate. Judge, please relieve us. Your opponent said they were worth between $300,000 and $450,000. Well, that's what he said, but that was nonsense. The testimony was that the value given did not include the fact that the Great Lakes, when they terminated the lease, they not only left the property and left their debt, more importantly, they took all of their Valvoline clients, they took the Valvoline franchises. It's like leaving a McDonald's and taking the McDonald's franchise and the landlord's saying, well, I've got an empty building. So is that what we're arguing over? How much the leases were worth after what you just described? Is that the issue? No, I think the fundamental issue is whether or not this is an exempt transaction due to the congressional exception. Should landlords and businessmen be able to make rational business decisions without being hauled into court for years in litigation? But 365C3, I mean, it really applies when the lease is terminated by its own terms, which was not our situation here, or by judicial action, because here it was terminated by private agreement. You're not disputing you can go back 90 days, right? Your Honor, I believe the exception still applies in that case because this is a non-residential transaction. Both of the parties are sophisticated business people. In this case, we would say the tenant in this case was far more sophisticated. Jim Wheat from Great Lakes Oil is one of the top ten business guys in the country. He's got five bad stores. He tries to get out of these five because he's got a tough landlord. What does tough landlord mean? The landlord wasn't giving concessions. The landlord did nothing illegal in this case. He just wouldn't give concessions like the other 45 locations. So these five, he was delinquent. He was behind. Lots of property maintenance issues. The one arguably good lease only has 18 months left on it. So he just says, look, take them all back. I'm going to leave, but I'm going to take my clients and my franchises with me. So you've got these five empty stores that you can immediately relet. I can move on to better business. And that's exactly what he represented to the bankruptcy court several months later when he filed for bankruptcy. So even if a debtor voluntarily terminated a lease in exchange for $10,000, when in fact the lease was worth $10 million, you would say that that's no problem? That that wouldn't be a textbook example of preferential transfer? Well, Your Honor, I think that's where we talk about collusive agreements and fraudulent activities. There's no evidence of fraud or collusion except that the committee argues collusion is any voluntary agreement. Well, that's not what collusion means. Collusion has got to have a fraudulent intent and usually it's concealed, and et cetera, et cetera. In this case, there's no allegation that anybody who benefited from this case, the debtor, Great Lakes, took all their clients and all their franchises and they got under all this debt. That's what 365 was meant to do. You don't need fraud for preferential transfer. Do you? I'm sorry? You don't have to prove fraud in order to establish that a debtor has made a preferential transfer. Well, that's where... I'd be perfectly open, you know, and you sell something and you're not concealing anything from anybody, but it is a preference for a particular creditor. Right? It's a preferential transfer. It doesn't have to be fraud. Well, if it falls... This one falls under the protection of 365. The question, I thought, was if it was so abhorrently fraudulent... No, stop the horribly fraudulent preferential preferring a creditor over the body of creditors. Now, why would that be extinguished by 365C? Is that what you're saying? Yes. Preferential transfers are permitted by C-3? Judge, we agree with Judge Kelly who addressed this issue and she talked about there being a need for a harmonious resolution of these two statutes. The Unsecured Creditors Committee would argue that under 540... Well, I thought the concern behind C-3 was if the creditors wanted to kick out the lessee. Right? And say, this is our lease. We're the creditors. And we don't like this lessee. We want to have our own lessee. Isn't that what C-3 is about? Protecting the person who took the lease, who got the lease before the bankruptcy? Yes. Yes. That is, when there is this business transaction, the landlord who takes the property back in a pre-bankruptcy non-residential situation should not have to look back and worry about being sued a year or two in advance or in the future by a creditors committee. The purpose of this law, we talk about the advent of our malls. We have one angry tenant goes under, a bankruptcy trustee or creditors committee gets involved, the entire mall gets crippled for two or three years. We have a lot of black, dark buildings in this country where there's no business going on. They're dark buildings. And so this section... Is that this case? Well, yes, Your Honor. C-365 is to give landlords and business people broad authority against later bankruptcy actions if they have done a voluntary agreement in a non-residential real estate type of a case. We want to keep property active out in the market. Without this protection, landlords can't take properties back. That is the real impact of this case. It ties up our property owners. It prevents business people from making reasonable business decisions. You could say that about any preferential transfer. Well, you could, Your Honor. Congress has spoken in this regard. We are also talking... So it has an arbitrary exception? No. I think all preferential transfers are fine. If you avoid a transfer, you complicate life for everybody. That's the logic of your position. Yes, and Congress acknowledged the public policy concern about allowing certain transactions not to be under the preference attack and to remove that cloud so property can remain open and be available. Don't you eliminate the cloud if you can find the remedy to damages? Your Honor, just the fact of litigation itself will tie the hands of most small business people. That's life, right? If you have a bankruptcy, it's tough on the bankrupt. All right. Your Honor, it's our position that we agree with Judge Kelly's clear decision on the issue, her thoughtful analysis. I can't really add to what she said, except that Congress has addressed this problem and when Congress... Not clearly. Well, that's why we're here, Your Honor. That's absolutely correct. There is some disagreement on case law. We've cited the David Young Treatise, which has not been refuted for 10 years. Real simple, clean analysis, which Judge Kelly adopted and which we adopted also. Thank you. Thank you very much, Mr. Judith. Judge Schriever, do you have anything further? I'd just like to mention the policy concern that was expressed with the hypothetical could a debtor terminate a lease that was worth $10 million and get $10,000 in return but just say tough luck to the creditors. That flips the bankruptcy on its head and it's the reason why there are avoidance statutes in the bankruptcy code. That transaction is constructively fraudulent or preferential and the code provides mechanisms for the estate to recover that value rather than just telling the body of creditors you're out of luck, this one creditor gets to keep all that value. Okay, well thank you very much. Judge Schriever. Thank both counsel.